Turner, J.,
 

 dissenting. I am of the opinion that the motion for a directed verdict made at the close of plaintiff’s/evidence and renewed at the close of all the evidence should have been sustained. The petition, with its innuendoes, presented a deficient cause of action for libel
 
 per quod.
 
 Special damages constitute the sole basis of recovery in an action
 
 per quod.
 
 Special damages' were neither alleged nor proved. The decision in the present case is an apt illustration of the oft repeated phrase “hard cases make, poor law.” It has been truly said that formalism is the twin-born sister of liberty. Once the formal procedure for the protection of rights, civil or .criminal, is broken down, we will then have arrived in judicial process to a condition analogous to that which has developed, in the last two decades to be the procedure before many boards and commissions, whose members are alarmingly referred to as bureaucrats. There has been much proper and successful sneering at the observance of “mere technicalities.” However, we should not encourage pushing across the shadowy borderland into the realm of substance. Just as one charged with crime is entitled to know in advance the exact nature of the charge against him so as to prepare his defense accordingly, so, too, one charged with invasion of the rights of another is entitled to similar information.
 

 Assuming that there was the error pointed out in the majority opinion, such error was invited by the plaintiff.
 

 
 *380
 
 Section 11341, General Code, provides^:
 

 “In an action for a libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff. If the allegation be denied, the plaintiff must prove the. facts, showing that the defamatory matter was published or spoken of him. In such action it shall not be necessary to set out any obscene word, but it shall be sufficient to state its import.”
 

 Instead of following the simple procedure provided in Section 11341, General Code, plaintiff sought to embroider, the publication with innuendoes stating her own interpretation of what the words of the publication meant. Where an innuendo is necessary to establish the meaning of an alleged libelous publication, such publication cannot be said to' be libelous
 
 per se.
 
 There may be instances where an innuendo may be treated as surplusage but such a case is not before us. Plaintiff’s explanation that the innuendoes were added merely out of excess of caution indicates that plaintiff was not certain that the publication was not ambiguous.
 

 It is the duty of the court to determine whether the published words áre actionable
 
 per se
 
 and to instruct the jury accordingly. If there is any doubt about it, that is, if the meaning is ambiguous, the publication is not actionable
 
 per se.
 
 In determining whether the language used is libelous
 
 per se
 
 the court must seek-to ascertain the meaning which the words convey to the general public. What does the so-called man in the street understand was meant? Except on the question of malice the intent of the publisher is immaterial. Instead of relying oil the claim that the publication was actionable
 
 per se,
 
 plaintiff included innuendoes in her petition and thereby admitted the ambiguity of the meaning of the publication. The trial court was thus led to refuse' to charge that the words were libelous
 
 *381
 

 per se
 
 but did charge the jury as if the petition contained two causes of action, one on libel
 
 per se
 
 and one on libel
 
 per quod.
 
 The charge on
 
 per quod,
 
 however, being deficient as there was no allegation in the petition or evidence submitted alleging or tending to prove damage, the jury should have been instructed that the verdict should be for the defendants on that phase of the case.
 

 I do not consider the charge otherwise than to illustrate the confusion caused by the J anus-faced petition. The innuendoes in the petition gave color to the claim of the defense that the publication was ambiguous and that the words did not mean what the plaintiff claimed in her innuendoes.
 

 In case No. 30254,
 
 Westropp
 
 v.
 
 E. W. Scripps Co.,
 
 this court overruled a motion to certify the case of
 
 Westropp
 
 v.
 
 E. W. Scripps Co.,
 
 76 Ohio App., 463, 59 N. E. (2d), 205, in which latter ease it was held in substance that where a petition in an action for libel resorts to an explanation by innuendoes to establish the plaintiff’s version of the meaning of the publication, ambiguity is thereby admitted and that in a libel action an innuendo may not- be employed to enlarge or extend the import of the claimed defamatory language. In the instant case the majority of the Court of Appeals affirmed the trial court on the authority of the case last above mentioned being a case decided by Judges Montgomery and Sherick of the Fifth Appellate District and Judge Doyle of the Ninth Appellate District, sitting by designation in the Eighth' Appellate District from vfhich last mentioned district came the present appeal.
 

 In this court some of the members are of the opinion that the meaning of the publication is ambiguous. With this situation before us, how can it be said that the meaning of the publication is clear and libelous
 
 per sei
 

 
 *382
 
 Assuming' (as did plaintiff in her request for instructions before argument) that the trial court had the power to leave to the jury the question whether the publication was libelous
 
 per se,
 
 the jury by its verdict found such publication to be either not libelous
 
 per se
 
 or coming within the qualified privilege. No interrogatory was submitted. The trial court at plaintiff’s request instructed the jury before argument as follows :
 

 “It is the law of Ohio that any printed words which are published of another person, and which tend to subject that person to public hatred, ridicule or contempt, are actionable
 
 per se.
 

 “If, therefore, you find by the preponderance or greater weight of the evidence that the editorial and pictures which it is agreed between the parties were published in the
 
 Cleveland Press
 
 on August 19, 1942, and which are set forth in the plaintiff’s petition, caused the persons who saw said pictures and read said editorial to have hatred, ridicule or contempt for the plaintiff, then and in such event said publication of said words and pictures was libelous
 
 per se,
 
 and your verdict must be for the plaintiff.
 

 “Any statement in print which falsely accuses a judge of acting as such a judge without judicial integrity, or'.of laxity in official conduct which has a prejudicial or detrimental effect upon the public welfare, is libelous
 
 per se.
 

 “And if you find that the.editorial and the picture of the plaintiff which was published in the
 
 Cleveland Press
 
 on August 19, 1942, which is the subject matter of this action, falsely represented that the plaintiff gave a continuance of his case to one Nathaniel Spruiel and thereby contributed to '• bring about the murder of. the Elyria policeman, and that such false representation was understood by the persons to whom
 
 *383
 
 said newspaper was circulated as making that-accusation, and that thereby the plaintiff was brought into public hatred, contempt, ridicule or scorn, your verdict must be for the plaintiff; and this would be true irrespective of the motives, or the intent of the defendant; and likewise irrespective of whether or not the preparation and publication of said editorial and picture was actuated by express or actual malice on the part of any of the editors or reporters of the
 
 Cleveland Press.
 

 “One of the claims of the defendant is that the preparation and publication of the editorial and picture with which this case is concerned, was under the protection of a legal privilege. .
 

 “I say to you that if you find that said editorial and picture were printed and published in such a form as to indicate to those reading the newspaper that the plaintiff was morally responsible for the murder of the Elyria policeman, and that it was so understood by those to whom the newspaper was circulated, then it was libelous
 
 per se,
 
 and actionable
 
 per
 
 se; and unless you find that said statement was true, your verdict must be for the plaintiff; and in such event, the defense of privilege would be of no avail.
 

 “In order that the plaintiff recover a verdict in this case, it will be necessary for her to prove certain issues of fact by what is known as the preponderance or the greater weight of the evidence.
 

 “This does not mean, however, that in order to recover a verdict she is required to prove all or any of the issues of this case by clear and convincing evidence, nor by such a weight of evidence as excludes all doubt from your minds.
 

 “In civil cases of this character, the law deals with probabilities rather than with certainties. If, therefore, you find upon a consideration of all the evidence
 
 *384
 
 in this case, that with reference to any issue involved, the contentions of the plaintiff are more probably true than not, then and in such event, the plaintiff will have proven such issue by sufficient proof; and if you find that with reference to each and all of these issues of fact required by the law to be proved by her, her contentions are more probably true than not, then she will have proved her case by sufficient proof to support a verdict in' her favor; and this would be true even though there may still remain a substantial doubt in your mind in respect to some or all of such disputed ■issues of fact.
 

 “Under the law of Ohio the publication of defamatory matter which is false in fact and not privileged is presumed to be malicious; and the plaintiff may recover without any proof of malice; and the burden is upon the defendant to disprove it.
 

 “If your verdict in this case, under all of the instructions of law given you, is for the plaintiff, it will be your duty to award her such a sum in damages as will fairly and fully compensate her for all of the damage, suffering and loss which she has suffered already, or which with reasonable certainty she will suffer in the' future, as the direct result of the printing and publishing of the editorial and picture on August 19, 1942, in the
 
 Cleveland Press.
 

 “In order to recover such amount of compensatory damages, it is not necessary for the plaintiff to prove actual'or express malice upon the part of the defendant corporation or any of its editors or reporters.
 

 “But if you find that the plaintiff has shown by the greater weight of the evidence that the editorial and the picture were printed and published as a result of the complete and reckless and wanton disregard of plaintiff’s rights, that would warrant you in finding it was published as the result of express malice. Ex
 
 *385
 
 press malice, or actual malice does not mean that plaintiff must show actual hatred or individual malevolence qr spite. Express malice, within the legal meaning of that term, may be shown by evidence which indicates and establishes that the defendant acted from a reckless and wanton disregard of plaintiff’s rights.
 

 “If, therefore, you find for the plaintiff, that she is entitled to compensation for her damage, suffering, and loss; but find also that the defendant-was actuated by a reckless and wanton disregard of plaintiff’s rights, then you would have the right to award an additional amount of damages, by way of punitive damages, such as you think would be appropriate under all of the circumstances of the case; and in that connection you have the right to take into account the wealth of the defendant corporation; and if you make such an allowance of such punitive damages, you may also inr elude a further sum as a counsel fee for the fees of the plaintiff’s lawyers.”
 

 • Near the end of the general charge the trial court said:
 

 “The charges in writing before argument which were read to you will go with you to your jury room. They are to be considered by you as part of the law applicable to.this case.”
 

 Therefore, there can he no question that the jury had before it,
 
 inter alia,
 
 rightly or wrongly, at plaintiff’s request, the question whether the publication was libelous per
 
 se.
 
 .
 

 As the petition contained no allegation of special damage and there was no application to amend and no evidence of special damage admitted or proffered, the court should have sustained the motion to direct a verdict made at the close of plaintiff’s evidence and renewed at the close of all the evidence. As substantial justice had been done in both the trial-court and the
 
 *386
 
 Court of Appeals the judgment below should,be af-1' firmed.
 

 In 33 American Jurisprudence, 223, Section 243, the rule in cases of libel
 
 per quod
 
 is succinctly stated as follows-:
 

 ‘(But the rule is entirely different when the libel or slander complained of is actionable only
 
 per quod,
 
 for in such cases, special damages constitute the sole basis for a recovery and it seems to'be generally agreed that a complaint which fails properly to allege them is defective * * V’ See, also, 15 American Jurisprudence, 743, Damages, Section 302
 
 et seq.
 

 Weygandt, C. J., concurs in the foregoing dissenting opinion.